USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/29/06

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-

VINCENT AMATO,

    Defendant.

No. 05 Cr. 384 (LTS)

------------------------------------------------------x

## MEMORANDUM ORDER

On December 8, 2005, after a thorough review of the testimony, evidence and arguments presented in connection with the September 7, 2005, suppression hearing in the above-captioned case, this Court issued a Memorandum Order (the "December 8 Order") denying a motion by Defendant Vincent Amato ("Defendant" or "Amato") to suppress physical evidence (specifically, a .380 caliber semi-automatic pistol) that was seized from his vehicle, a 2002 Mercury Mountaineer, during the course of a traffic stop. See United States v. Amato, No. 05 Cr. 384(LTS), 2005 WL 3370494 (S.D.N.Y. Dec. 8, 2005). Based on the law enforcement testimony presented by the Government at the hearing the Court determined, inter alia, that "the search [of Defendant's vehicle, during which a firearm was seized,] was conducted only after police officers observed Defendant making unusual movements, and after an officer had observed a pistol through the window of the car." Id. at *1.

Following the Court's December 8 Order, the Court granted Defendant's request to submit an additional videotape purporting to show that, even with the aid of a flashlight, it was not possible for a police officer to have seen a pistol through the rear passenger side window of

Copies given/faxed to Counsel of Record
Chambers of... 3/28/06

the Defendant's vehicle on the night of his arrest.[1] Finding the videotape inconclusive, the Court determined that it was necessary to view the vehicle itself after dark. On January 25, 2006, at approximately 5:30 p.m., the Court and counsel inspected the Mountaineer with the aid of a flashlight of the type the officer had testified he had used to look through the windows of the vehicle on the night of the arrest.[2] The Court then provided counsel with the opportunity to present further submissions. The Government submitted an affidavit, dated February 14, 2006, from investigator Ronald G. Gardella ("Gardella"), who had tested the tint-levels of the windows on Defendant's vehicle and found the level of tint inconsistent with his reading of aftermarket window tinting documentation that the defense had proffered in connection with the December 2005 suppression hearing. The defense responded to the affidavit with a letter from counsel representing that Gardella had misread the tinting receipt and that the dark window tint was consistent with the documentation.

At a conference held on February 16, 2006, the Court made the following findings of fact on the record, based on its inspection of the vehicle and the Gardella affidavit: (1) on January 25, 2006, it was not possible to see through the rear passenger side windows of the

---

[1] The Court did not take the step of reopening the record lightly. It did so only after careful consideration, because it had not been clear prior to the hearing that the officer would assert that the had observed the gun through the closed, tinted rear window of the vehicle, and because the defense made evidentiary proffers concerning the physical impossibility of the observation testified to by the police officer. The Court determined that, in this particular case and in light of the assertion that the officer's testimony would clearly be belied by an inspection of the vehicle, the interests of justice outweighed the interests of judicial efficiency and closure.

[2] The Court used a Maglight flashlight supplied by Defense Counsel, which was represented, without objection from the Government, to be a standard police-issue version of the flashlight.

Mercury Mountaineer after dark with the aid of a Maglight flashlight; and (2) the Court's visual inspection is consistent with Gardella's finding that the windows in their present condition transmit only 3% of light. The Court identified a single material factual issue remaining with regard to Defendant's suppression motion: "Was the level of tinting of the rear passenger side window of Amato's vehicle on the night of his arrest the same as the current level of tinting on the window?" Noting that the record included only the police officer's testimony, a copy of the tinting receipt and representations of counsel concerning the condition of the vehicle on the night of the arrest, the Court allowed the parties a final round of evidentiary submissions on this discrete issue.

On March 10, 2006, the defense served and submitted affidavits from Amato's brother and from an employee of the window tinting company attesting to the aftermarket application of the current level of tint to the vehicle windows on June 14, 2004 (several months prior to Amato's arrest) and representing that the tint has not been altered since that time. The affidavits were accompanied by documentation of the original factory level of tint, to which additional tint had been applied. The Government proffered no further evidence and did not request an opportunity to cross-examine either witness.

## DISCUSSION

The relevant findings set out in the December 8 Order were based primarily upon the testimony of New York City Police Officer Sean Lynch ("Lynch"). See Amato, 2005 WL 3370494, at *2 ("The Court finds that in light of Officer Lynch's observation of the gun, he and Officer Owens had probable cause to seize it.") Lynch had testified that, while he was looking through the rear passenger side window of Amato's vehicle with his flashlight, he "noticed a

firearm . . . sticking out of the pouch behind the driver's seat." (Lynch Test., Suppression Hearing Tr., 51, September 7, 2005.) Officer Lynch further testified that he was "[r]ight up next to the vehicle" as he was looking through the window. (Id.) The Court had also considered a videotape made by the defense in support of its contention that it was impossible for Officer Lynch to have been able to see through the tinted car windows. However, it was not clear from the videotape whether a person could have seen through the tinted windows with the aid of a flashlight. Accordingly, the Court found that the Government had met its burden of proof and denied Defendant's motion.

The Court's own inspection of the vehicle and the subsequent testimonial and documentary evidence give the lie to Lynch's testimony. The Court was not able to see through the rear passenger side window, which was heavily tinted black, with or without the aid of a flashlight. Even when the flashlight was held against the window, it did not illuminate the rear seating area within the car. The flashlight also neither illuminated the rear of the front passenger seat nor the pouch located on the rear of the front passenger seat. Indeed, one could not see the pouch.

The uncontroverted additional evidentiary proffers are sufficient to establish that the level of tint observed by the Court was the same as that which was on the vehicle's windows at the time of Amato's arrest. It was thus impossible for Officer Lynch to have observed the gun through the window of the vehicle. The Government has not, in light of the totality of the evidence of record, carried its burden of demonstrating by a preponderance of the credible evidence that the subsequent search of the vehicle, in which the gun was found in the pouch located behind the driver's seat, was supported by probable cause. The December 8 Order is

vacated to the extent it denied Defendant's motion to suppress the physical evidence seized from the vehicle, and Defendant's suppression motion is hereby granted.

SO ORDERED.

Dated: New York, New York
       March 28, 2006

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge